```
            UNITED STATES DISTRICT COURT FOR THE
                  DISTRICT OF NEW HAMPSHIRE
```

Dartmouth Hitchcock Medical Center

    v.                              Civil No. 09-cv-160-JD

Cross Country Travcorps, Inc.,
d/b/a Cross Country Staffing
(and their affiliates), and
CHG Medical Staffing, Inc.,
d/b/a RN Network


                        PROCEDURAL ORDER

    Dartmouth Hitchcock Medical Center ("DHMC") brought an action against Cross Country Travcorps, Inc., doing business as Cross Country Staffing, and their affiliates (referred to collectively as "Cross Country"), and CHG Medical Staffing, Inc., doing business as RN Network ("CHG").  DHMC's claims against Cross Country were based in part on a contract between those two parties entitled "Healthcare Staffing Vendor Management Agreement" (the "Agreement").  DHMC moved for summary judgment on its claim against Cross Country seeking indemnity for liability and attorneys' fees and expenses incurred in Aumand v. Dartmouth Hitchcock Medical Center, No. 06-cv-434-JL.  DHMC also seeks attorneys' fees incurred in the present action.  Both Cross Country and CHG filed memoranda in opposition to DHMC's summary judgment motion.

There are a number of issues raised by the memoranda in support of and opposition to summary judgment that would benefit from oral argument.  Therefore, a hearing will be scheduled at which counsel shall be prepared to address the following issues, including whether or not an issue is relevant to the decisions the court must make at this time:

1.   DHMC's motion seeks summary judgment only on its indemnification claim against Cross Country.  Why did CHG join in Cross Country's motion and file an opposition to the motion?

2.   Is it undisputed that CHG is ultimately responsible for the actions of Nurse Burdett, as stated in CHG's Opposition to Plaintiff's Motion for Summary Judgment on Count I – Indemnification (p. 2)?

3.   What is the meaning of the phrase "directly arising out of" as used in paragraph 16, "Liability and Indemnification," of the Agreement?
    a.   It appears that Cross Country is contending that the phrase limits Cross Country's duty to indemnify DHMC to claims and liabilities for the actions of healthcare professionals ("HCPs") provided by Cross

Country itself and does not include HCPs provided through a subcontract with approved vendors.  Since paragraph 1 of the Agreement contemplates subcontracting with approved vendors, what is the basis for this contention?

b.   It appears that Cross Country is arguing that the phrase limits Cross Country's duty to indemnify DHMC to claims and liabilities arising out of Cross Country's actions in management or placement services, such as failing to provide an HCP as agreed, and excludes indemnification for the negligence of HCPs provided under the Agreement.  If so, why does the Agreement require, in paragraph 15, that Cross Country procure professional liability and general liability insurance for each HCP employed under the Agreement and, in paragraph 11, that DHMC notify Cross Country's Risk Management Department of any patient care incident?

c.   Does the phrase limit Cross Country's duty to indemnify DHMC only for Nurse Burdett's actions, as distinguished from actions of any other person alleged to have been negligent in the Aumand case, or does the phrase require indemnification for DHMC's entire liability in the Aumand case if Nurse Burdett were a

>    direct or proximate cause of the harm to Mrs. Coffey?
>
>    d.   How does the addition of the word "directly" affect the generally broad interpretation of the phrase, "arising out of," applied in New Hampshire cases?

4.   It appears that DHMC and Cross Country each has a different interpretation of the indemnification clause, which they offer in support of and in opposition to summary judgment.  Does this raise a question of ambiguity in the contract terms?

>    a.   If so, what are the reasonable but conflicting meanings of the indemnification clause to be considered in an ambiguity analysis?
>
>    b.   It appears that the Agreement was drafted by Cross Country.  Should any ambiguity in language be construed against the drafter?

5.   Contract language must be construed after reading the document as a whole.  How does each party construe the following paragraphs, when considering the document as a whole, in light of the position taken by each party:  (1) description of Cross Country's services in paragraph 1, (2) contemplation of subcontracting in paragraph 1, (3) patient care incident

reporting in paragraph 11, (4) insurance requirement in paragraph 15, and (5) "100% Guarantee" in paragraph 21?

6.  What is the relevance of the parties' course of dealing in relation to providing a defense and indemnification for the <u>Aumand</u> case?

7.  Does Cross Country have an insurance policy, procured under the requirements of paragraph 15?

Counsel are also granted leave to raise and argue any other issues they deem relevant to the motion pending before the court.

## Conclusion

For the foregoing reasons, a hearing on DHMC's motion for summary judgment will be held on September 24, 2009, at 1:30 p.m.

SO ORDERED.

*/s/ Joseph A. DiClerico, Jr.*
Joseph A. DiClerico, Jr.
United States District Judge

September 17, 2009

cc:  Andrew D. Dunn, Esquire
     Ronald J. Lajoie, Esquire
     Ralph Suozzo, Esquire