UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE


<u>Dartmouth Hitchcock Medical Center</u>

    v.                                    Civil No. 09-cv-160-JD
                                              Opinion No. 2010 DNH 015

<u>Cross Country Travcorps, Inc.,
d/b/a/ Cross Country Staffing
(and their affiliates), and
CHG Medical Staffing, Inc.,
d/b/a RN Network</u>


O R D E R

Dartmouth Hitchcock Medical Center ("DHMC") brought an action against Cross Country Travcorps, Inc., doing business as Cross Country Staffing, and their affiliates (referred to collectively as "Cross Country"), and CHG Medical Staffing, Inc., doing business as RN Network ("CHG"). DHMC moves for summary judgment on its claims against Cross Country for indemnification and payment of legal fees and expenses incurred in its defense in <u>Aumand v. Dartmouth Hitchcock Medical Center</u>, No. 06-cv-434-JL. DHMC also moves for summary judgment on its claim against Cross Country for attorneys' fees incurred in the present action. Although DHMC did not seek summary judgment on its claims against CHG, CHG filed an objection to the motion.

The court issued a procedural order on September 17, 2009, indicating that a hearing would be held on DHMC's motion, and

requiring the parties to be prepared to address several issues relevant to that motion. The hearing was held on November 17, 2009. In preparation for the hearing, Cross Country filed a "Written Response" to the court's procedural order. Shortly after the hearing, DHMC filed a "Rejoinder" to the Written Response, to which Cross Country then filed a "Response." Each of these documents was considered for purposes of summary judgment.

CHG acknowledges, and the other parties do not dispute, that the amount of damages awarded in the Aumand case is attributable, at least in part, to the negligence of Nurse Burdett and that the amount attributable to Nurse Burdett's negligence is CHG's responsibility.

## Standard of Review

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The party seeking summary judgment must first demonstrate the absence of a genuine issue of material fact in the record. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). A party opposing a properly supported motion for summary

judgment must present competent evidence of record that shows a genuine issue for trial.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).  All reasonable inferences and all credibility issues are resolved in favor of the nonmoving party.  See id. at 255.  Where, as here, the party moving for summary judgment also bears the burden of proof on an issue, the movant "cannot prevail 'unless the evidence that he provides on that issue is conclusive.'"  E.E.O.C. v. Union Independiente de la Autoridad de Acueductos y Alcantarillados de P.R., 279 F.3d 49, 55 (1st Cir. 2002) (quoting Torres Vargas v. Santiago Cummings, 149 F.3d 29, 35 (1st Cir. 1998)).  Evidence is conclusive if it provides a "sufficient [basis] for the court to hold that no reasonable trier of fact could find other than for the moving party."  Id. (citation omitted).

### Discussion

This suit arises out of a medical negligence action, Aumand v. Dartmouth Hitchcock Medical Center, No. 06-cv-434-JL, brought by the daughter and husband of a patient, Katherine Coffey, who died following treatment at DHMC.  The plaintiffs in that suit alleged, inter alia, that DHMC provided medical services that violated the standard of care, which resulted in injury to Mrs.

Coffey's hand and ultimately caused her death. A jury found in favor of the plaintiffs.

Nurse Ruth Burdett, who caused the injury to Mrs. Coffey's hand by administering medication improperly, was provided to DHMC under the terms of two contracts. The first contract, the "Healthcare Staffing Vendor Management Agreement" ("Vendor Agreement"), between DHMC and Cross Country, required Cross Country to provide healthcare professionals to DHMC upon DHMC's request. The second contract, the "Staffing Subcontractor Agreement," between Cross Country and CHG, also dealt with the provision of healthcare professionals.[1]

Following the jury verdict for the plaintiffs in Aumand, DHMC and CHG each paid part of the damages award to the plaintiffs. Cross Country did not indemnify DHMC or reimburse DHMC for its attorneys' fees. In its motion for summary judgment, DHMC asserts that the Vendor Agreement requires Cross Country to provide indemnification and to pay DHMC's attorneys' fees incurred in both the Aumand case and this case.

---

[1]The Subcontractor Agreement is a contract between Cross Country and CHG. Therefore, it is not considered for purposes of this motion, which addresses only the Vendor Agreement between Cross Country and DHMC. Specifically, the court does not consider Cross Country's or CHG's obligations pursuant to the Subcontractor Agreement.

A.   <u>Indemnity</u>

DHMC contends that Cross Country is required to indemnify DHMC for the full amount it paid to the <u>Aumand</u> plaintiffs, based on the indemnification clause in the Vendor Agreement.  Cross Country asserts a different interpretation of that clause, arguing that it imposes no obligation upon Cross Country to indemnify DHMC in these circumstances.  CHG, which is a party in this case but not named in the summary judgment motion, also filed an objection, in which it stated that it "is ultimately responsible for the actions of Nurse Burdett."  CHG's Opp. at 2.

Whether Cross Country must indemnify DHMC is a question of law that turns on the meaning of the Vendor Agreement.  In interpreting a contract, New Hampshire courts "look to all of the language of the [a]greement . . . [and] give the language used by the parties its reasonable meaning, considering the circumstances and the context in which the agreement was negotiated, and reading the document as a whole."[2]  <u>Glick v. Chocorua Forestlands Ltd. P'ship</u>, 157 N.H. 240, 248 (2008).  Where there is no

---

[2]The parties have argued in various other motions that the law of other jurisdictions may govern other issues in this case. All three have applied New Hampshire law, however, to interpret the Vendor Agreement in their briefs on this motion.

ambiguity in the contract language, courts "determine the parties' intent from the plain meaning of [that] language."[3]  Id.

The provision at issue is paragraph 16 of the Vendor Agreement, entitled "Liability and Indemnification."  By its terms,

> [Cross Country] agrees to indemnify and hold harmless [DHMC] from claims and liabilities (including reasonable attorneys' fees and expenses incurred in the defense thereof at all trial levels) relating to any property damage, personal injuries or death, directly arising out of the acts or omissions of [Cross Country] in connection with [Cross Country]'s duties and services provided under this Agreement.

The parties dispute the meanings of the phrases "acts or omissions" and "directly arising out of."

### 1. "Acts or Omissions"

Cross Country argues that its only "act" in this situation was to "arrang[e] to have a subcontractor, CHG, provide staff to

---

[3] Although the parties addressed the issue of ambiguity at oral argument and in the documents they filed just before and after oral argument, the court is satisfied that the terms of the contract as they relate to this motion are not ambiguous. "Interpretation of a contract, including whether a contract term or clause is ambiguous, is ultimately a question of law for this court to decide. . . . A clause is ambiguous when the contracting parties reasonably differ as to its meaning." Merrimack School Dist. v. Nat'l Sch. Bus Serv., Inc., 140 N.H. 9, 11 (1995) (quotations omitted).  Here, although the parties' interpretations are different, they are not both reasonable.

DHMC."  Obj. at 13.  DHMC contends that Cross Country's act was "the supplying of Nurse Burdett."  Pl.'s Memo. at 13-14.

Cross Country's argument is unpersuasive.  As described in the Vendor Agreement, Cross Country's "[s]ervices" were to "provide . . . upon request by [DHMC], Registered Nurses and Licensed Practical Nurses, Licensed Practical Nurses [sic] and Licensed Vocational Nurses, collectively referred to as Healthcare Professionals ("HCPs") to [DHMC] for performance of nursing and healthcare services."  Vendor Agreement ¶ 1.  The Agreement allowed Cross Country to "perform its obligations as [DHMC's] exclusive provider of HCPs" either by itself providing HCPs to DHMC or by subcontracting with other vendors "to provide HCPs to [DHMC] under the terms of [the] Agreement."  Id.  In this instance, Cross Country chose the second option -- to subcontract with CHG -- in order to provide an HCP to DHMC.

Regardless of the means by which Cross Country provided the HCP, however, its underlying obligation remained the same: to provide HCPs to DHMC, not simply to make arrangements with a subcontractor, as Cross Country asserts.  This interpretation of the agreement is further buttressed by the fact that Cross Country was DHMC's "exclusive provider of HCPs."  Id. (emphasis added).  Cross Country's obligation to provide an HCP under the Vendor Agreement was satisfied once a nurse had been furnished;

7

therefore its "act" for purposes of the indemnity clause was providing Nurse Burdett to DHMC.

### 2. "Directly Arising Out Of"

Cross Country argues that "directly arising out of" requires that there be an "immediately traceable connection between" Cross Country's act and the claims in Aumand. Obj. at 6 & 13. DHMC argues that "arising out of" is a "very broad, general and comprehensive term," which means that "the causal connection . . . must be more than tenuous." Pl.'s Memo. at 15-16. Without explaining how the term "directly" modifies that phrase, DHMC argues that Cross Country must indemnify DHMC for the full verdict in Aumand because paragraph 16 of the Vendor Agreement "is part of a comprehensive scheme evidencing an intent to shift the entire responsibility for risks associated with the performance of the contract to Cross Country." Id. at 21.

#### a. "Arising Out Of"

To determine the meaning of a disputed phrase, the court looks first at how it has been defined by New Hampshire courts. See Energynorth Natural Gas, Inc. v. Cont'l Ins. Co., 146 N.H. 156, 160 (2001) (explaining that, "'[w]here judicial precedent clearly defines a term at issue, [the court] need look no further

than that definition'") (quoting Coakley v. Maine Bonding & Cas. Co., 136 N.H. 402, 410 (1992)). New Hampshire courts interpret the phrase "arising out of" as a "very broad, general and comprehensive term . . . meaning 'originating from or growing out of or flowing from.'" Merrimack Sch. Dist. v. Nat'l Sch. Bus Serv., Inc., 140 N.H. 9, 13 (1995) (citation omitted). While the act in question "need not have been the proximate cause of the injuries[,] . . . the causal connection between the two must be more than tenuous." Pro Con Constr., Inc. v. Acadia Ins. Co., 147 N.H. 470, 472 (2002). A causal connection is more than tenuous if a "causal nexus" exists between the operative actions or events. See id.

Cross Country argues that the facts in this case are analogous to those in Pro Con Construction, Inc., supra. In that case, the plaintiff general contractor had subcontracted with an interior painting company, which carried liability insurance with the defendant insurance company. 147 N.H. at 471. When an employee of the subcontractor slipped and fell on an icy sidewalk, he sued the general contractor, claiming negligence. Id. The general contractor sought indemnity from the insurance company under a provision covering "liability arising out of [the subcontractor's] ongoing operations performed for [the general contractor]." Id. The New Hampshire Supreme Court held that the

provision did not cover the incident in question because the subcontractor's "ongoing operations" consisted only of interior painting.  Id. at 473.  The employee's accident occurred as he was leaving the work site and walking toward a coffee truck parked in the work site's lot, and the court found that "no nexus exists between the painting operations and the injuries."  Id.

The facts of Pro Con are distinguishable.  In that case, the court found that there was no nexus because the employee was not performing any work function when he fell; rather, he was taking a personal break from work.  Here, Cross Country contracted with DHMC to furnish HCPs who would provide healthcare at DHMC.  Cross Country furnished Nurse Burdett to DHMC in order to fulfill its obligation under the terms of the Vendor Agreement, and Nurse Burdett was engaged in the work she was hired and furnished to perform.  Thus, there was a close causal nexus between Cross Country's act and Nurse Burdett's work at DHMC.

This case is more analogous to Merrimack School District, 140 N.H. 9.  In that case, the plaintiff school district had contracted with the defendant bus company to provide transportation for students.  Id. at 10.  After one of the defendant's buses hit a student and the child's father sued both parties, the school district sought indemnification from the bus company under the terms of their contract.  Id. at 11.  The

provision in that contract required the defendant to carry insurance in order to indemnify the plaintiff for claims for personal injury and death "which may, in any way, arise from or out of the operations of the defendant pursuant to the terms of this Agreement."  Id. at 12.  Although the wording of the provision was broader than the language in the Vendor Agreement in this case, the Merrimack court was construing the phrase "arise from or out of" and held that the claims "'ar[o]se out of' the defendant's operations to the extent that one of defendant's school buses, operated by one of the defendant's employees, was the actual cause of the injury to the child."  Id. at 13.  Similarly, the tort claims in Aumand "arose out of" Cross Country's services -- namely, providing HCPs to DHMC – because the HCP whom Cross Country provided in this instance committed negligence that was the actual cause of Ms. Coffey's injury and led to her death.

    b.   "Directly"

As is noted above, Cross Country interprets "directly" to require an "immediately traceable connection."  DHMC did not analyze "directly" in its motion but argues in its Rejoinder that the word "suggests that there must be some connection between an act or omission . . . and the personal injury or death."

Rejoinder at 6.  DHMC's definition does not comport with New Hampshire precedent or the plain meaning of the language of the contract.

As discussed above, "'the parties' intent will be determined from the plain meaning of the language used.  The words and phrases used by the parties will be assigned their common meaning, and [the court] will ascertain the intended purpose of the contract based upon the meaning that would be given to it by a reasonable person.'"  Found. for Seacoast Health v. HCA Health Servs. of N.H., Inc., 157 N.H. 487, 492 (2008) (quoting Greenhalgh v. Presstek, 152 N.H. 695, 698 (2005)).

Although "arising out of" is a broad term, in this case the "claims and liabilities" must be <u>directly</u> causally connected to Cross Country's acts or omissions.  New Hampshire cases have not construed the meaning of "directly" when used with the phrase "arising out of," and the parties have found no cases from other jurisdictions that have construed the term in this context.[4]

---

[4]During oral argument, counsel for DHMC and Cross Country debated whether the term "directly" was negotiated by the parties and added to the Healthcare Staffing Management Agreement when Cross Country became DHMC's exclusive source of traveling healthcare providers.  Their debate does not inform the court's interpretation of the term and does not amount to a genuine issue of material fact that would preclude summary judgment.  Cross Country attempted to rely on an "affidavit" to show that the term "directly" had been negotiated by the parties.  The document submitted, however, merely adopted, by reference, the factual

In general, the adverb "directly" means: "(1) In a straightforward manner; (2) In a straight line or course; (3) Immediately." Black's Law Dictionary 527 (9th ed. 2009). As used in paragraph 16, "directly" limits the scope of the indemnification obligation to the claims and liabilities against DHMC that were "directly" caused by Cross Country's performance of its duties and services under the Agreement. As discussed above, the phrase "arising out of" means that the relationship between the act in question and the resulting claims must fall somewhere on the spectrum between proximate cause and a more than tenuous connection. <u>Pro Con Constr., Inc.</u>, 147 N.H. at 472. Where the word "directly" modifies the phrase "arising out of," the relationship must fall closer to the proximate cause end of that spectrum.

Precisely where the phrase "directly arising out of" falls on the causation spectrum need not be resolved here because the jury found that DHMC was negligent in the <u>Aumand</u> case. There, the court instructed the jury that,

> The plaintiffs claim that [DHMC] acted negligently by
> failing to treat Mrs. Coffey's hypoglycemia properly
> and by administering repeated doses of a certain drug,
> D-50. The plaintiffs claim that these negligent acts

statement presented in Cross Country's memorandum and was improperly based on the affiant's knowledge and belief. The document was not considered for purposes of summary judgment.

>     caused an injury to Mrs. Coffey's left hand; that the
>     wounds to Mrs. Coffey's left hand served as the entry
>     point for an infection; and that the infection caused
>     Mrs. Coffey's death.

Aumand v. Dartmouth Hitchcock Med. Ctr., No. 06-cv-434-JL, document no. 107, at 14.  The court also instructed the jury that to prove medical negligence in that case, the plaintiffs had to show, among other things, that DHMC caused or substantially caused the injuries that Mrs. Coffey suffered and that the injuries would not otherwise have occurred.  Id.; see also In re Haines, 148 N.H. 380, 383 (2002) (providing same standard for proximate cause in medical negligence).

The parties do not dispute that Nurse Burdett administered repeated doses of D-50 to Mrs. Coffey's hand, which caused the injury that led to Mrs. Coffey's death.  The parties also do not dispute that in finding DHMC negligent, the Aumand jury necessarily concluded that Nurse Burdett's administration of D-50 to Mrs. Coffey's hand was at least part of the cause of Mrs. Coffey's injury and death.  Therefore, the phrase "directly arising out of" obligates Cross Country to indemnify DHMC for that part of the damages awarded in the Aumand case that is attributable to Nurse Burdett's negligence.  Cross Country is not obligated, under the Vendor Agreement, to indemnify DHMC for that part of the Aumand verdict, if any, which is attributable to the

negligence of someone other than Nurse Burdett.  Because the jury's verdict did not establish that Nurse Burdett was the sole cause of Mrs. Coffey's injury and death, a question remains as to what part of the damages awarded in the Aumand case is attributable to Nurse Burdett's negligence.[5]

B.   Attorneys' Fees in Aumand

The Vendor Agreement requires Cross Country to pay "reasonable attorneys' fees and expenses incurred in the defense" of the claims and liabilities "relating to any . . . personal injuries or death[] directly arising out of the acts or omissions of [Cross Country] in connection with [Cross Country's] duties and services provided under this Agreement."  Vendor Agreement ¶ 16.  In other words, the same provision that describes Cross Country's liability with respect to indemnification also describes its liability with respect to attorneys' fees.  Any further discussion is premature at this point because DHMC has not developed its theory for an award of attorneys' fees in light

---

[5]Although DHMC argues that the complaint and other pleadings in Aumand "targeted" or "concentrated" on the negligence of Nurse Burdett, DHMC admits that other negligence was also addressed. See Pl.'s Memo. ¶¶ 6-9 (referring to negligence of Nurse Practitioner Jean Clark and DHMC itself).  The court does not address allocation of the Aumand verdict at this time.

of the court's interpretation of the phrase "directly arising out of."

C. <u>Attorneys' Fees in This Action</u>

A determination of whether DHMC or Cross Country is entitled to attorneys' fees or any other costs incurred in litigating this action would be premature at this time.

<u>Conclusion</u>

For the foregoing reasons, DHMC's motion for summary judgment on Count I (document no. 19) is denied.

SO ORDERED.

*/s/ Joseph A. DiClerico, Jr.*
Joseph A. DiClerico, Jr.
United States District Judge

January 27, 2010

cc: Andrew D. Dunn, Esquire
    Ronald J. Lajoie, Esquire
    Anil Madan, Esquire
    Joseph Gardner Mattson, Esquire
    Ralph Suozzo, Esquire