UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE


Dartmouth Hitchcock Medical Center


            v.                     Civil No. 09-cv-160-JD
                                   Opinion No. 2010 DNH 102

Cross Country Travcorps, Inc.,
d/b/a Cross Country Staffing
(and their affiliates), and
CHG Medical Staffing, Inc.,
d/b/a RN Network


                        O R D E R


     Dartmouth Hitchcock Medical Center ("DHMC") brought an
action against Cross Country Travcorps, Inc., doing business as
Cross Country Staffing, and their affiliates (referred to
collectively as "Cross Country"), and CHG Medical Staffing, Inc.,
doing business as RN Network ("CHG").  CHG moves for summary
judgment, seeking an order that all three claims against CHG be
submitted for binding arbitration.


                    Standard of Review

     Summary judgment is appropriate when "the pleadings, the
discovery and disclosure materials on file, and any affidavits
show that there is no genuine issue as to any material fact and
that the movant is entitled to judgment as a matter of law."
Fed. R. Civ. P. 56(c).  The party seeking summary judgment must

first demonstrate the absence of a genuine issue of material fact in the record.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  A party opposing a properly supported motion for summary judgment must present competent evidence of record that shows a genuine issue for trial.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).  All reasonable inferences and all credibility issues are resolved in favor of the nonmoving party. See id. at 255.

### Background

This suit arises out of a medical negligence action, Aumand v. Dartmouth Hitchcock Medical Center, No. 06-cv-434-JL, brought by the daughter and husband of a patient, Katherine Coffey, who died following treatment at DHMC.  The plaintiffs in that suit alleged, inter alia, that DHMC provided medical services that violated the standard of care, which resulted in injury to Mrs. Coffey's hand and ultimately caused her death.  A jury found in favor of the plaintiffs.

Nurse Ruth Burdett, who caused the injury to Mrs. Coffey's hand by administering medication improperly, was provided to DHMC under the terms of two contracts.  The first contract, the "Healthcare Staffing Vendor Management Agreement" ("Vendor Agreement"), between DHMC and Cross Country, required Cross

Country to provide healthcare professionals to DHMC upon DHMC's request.  The second contract, the "Staffing Subcontractor Agreement" ("Subcontract"), between Cross Country and CHG, required CHG to provide healthcare professionals to Cross Country upon Cross Country's request.

The Subcontract contained a provision requiring CHG to "indemnify, defend, save and hold harmless . . . [DHMC] . . . from and against any and [sic] liability . . . which directly or indirectly arise out of any act of negligence or willful acts by Subcontractor or any of its HCPs."  Deft.'s Mot., Exh. 1 ("Subcontract"), ¶ VIII.C.  Similarly, the Vendor Agreement required Cross Country to "indemnify and hold harmless [DHMC] from claims and liabilities . . . relating to . . . personal injuries or death[] directly arising out of the acts or omissions of [Cross Country] in connection with [its] duties and services provided under this Agreement."  Deft.'s Mot., Exh. 2, ¶ 16.

The Subcontract provided that "[a]ll disputes arising from or relating to this Agreement and not settled between the parties will be decided before a neutral third party, in accordance with the Rules of the American Arbitration Association."  Id., ¶ X.G.  Furthermore, the Subcontract contained a choice of law provision, which stated that "[t]his Agreement shall be governed by the laws of the State of Florida without regard to conflicts of law."  Id.

3

at ¶ X.O.   The Vendor Agreement did not contain any arbitration or choice-of-law provision.

The Subcontract also provided that, "[i]n the event that any condition or covenant contained in this Agreement is held invalid or void by any court of competent jurisdiction, such condition or covenant shall be deemed severable from the rest of this Agreement." <u>Id.</u> at ¶ X.L.

During the <u>Aumand</u> litigation, DHMC tendered the defense of that action to CHG.   In a letter from Morris Jensby, the general manager of CHG's third-party claim administrator, CHG agreed to pay for the defense "under a full reservation of CHG's right to withdraw said obligation to defend if, in the course of discovery and litigation, it is determined that no CHG health care provider . . . committed any negligent or willful act."   DHMC's Opp. to CHG's July 10, 2009, Mot. to Dismiss, Exh. B ("Jensby Letter"), at 1.[1]   Jensby also stated that "there is no obligation, contractually or otherwise, for CHG to defend or indemnity [sic] DHMC for the independent negligence or willful acts of any

---

[1]Neither CHG nor DHMC attached the March 2007 Jensby letter to their memoranda in support of and in opposition to CHG's motion for summary judgment.   Both parties refer to the letter, however, and it was previously filed in support of DHMC's opposition to CHG's July 10, 2009, motion to dismiss.   Therefore, the court will consider the document for purposes of deciding the summary judgment motion.

person(s) or entities that are not employed directly by CHG."
Id. at 1-2.  According to CHG, it had an "obligation to defend
and, potentially, indemnify DHMC," but "[n]othing in this
agreement to defend or the reservation of rights associated with
this agreement either abrogates or supplements the duty to defend
and indemnify DHMC as a third party beneficiary to the Staffing
Subcontractors Agreement . . . entered into between Cross Country
and CHG on May 17, 2005."   Id. at 2.

　　　Following the jury verdict for the plaintiffs in Aumand,
DHMC and CHG each paid part of the damages award to the
plaintiffs.  DHMC sued Cross Country and CHG, alleging that they
are obligated under the Vendor Agreement and the Subcontract,
respectively, to defend, indemnify, and hold harmless DHMC.  DHMC
also brought a claim for contribution against both defendants,
and a claim for breach of contract against CHG.  CHG moves for
summary judgment, seeking an order that all of the claims against
CHG be submitted for binding arbitration.


Discussion

　　　CHG argues that the arbitration provision in the Subcontract
applies to DHMC's claims for indemnification and breach of
contract, and that therefore CHG can compel DHMC to arbitrate
those claims.  CHG contends, as a threshold matter, that the

5

court is obliged, under the Subcontract's choice of law provision, to construe the arbitration provision using Florida law.  Based upon Florida law, CHG then argues that DHMC was a third-party beneficiary of the Subcontract, and that it is bound by the arbitration provision.  Apparently conceding that the arbitration provision does not explicitly cover DHMC's contribution claim, CHG argues that the claim should be submitted for arbitration with the other two in the interest of judicial economy.

DHMC argues that the arbitration provision does not apply to it because it did not sign, nor was it a party to, the Subcontract.  DHMC disputes the applicable law, contending that the court should apply federal law.  Examining the theories under which federal courts have held that a nonsignatory is bound to an arbitration agreement, DHMC argues that none apply to it.  In the alternative, DHMC argues that the arbitration clause is unenforceable against it under Florida law because there is no binding agreement to arbitrate, no arbitrable issue exists, and the right to arbitrate was waived.  With respect to its claim for contribution, DHMC argues that no judicial economy would be achieved by submitting the claim for arbitration along with the others.

I.    Indemnification and Breach of Contract Claims

      A.    Applicable Law

      Section 2 of the Federal Arbitration Act provides that a
"written provision in any . . . contract evidencing a transaction
involving commerce to settle by arbitration a controversy
thereafter arising out of such contract or transaction . . .
shall be valid, irrevocable, and enforceable."  9 U.S.C. § 2.
"The effect of [section 2 of the FAA] is to create a body of
federal substantive law of arbitrability, applicable to any
arbitration agreement within the coverage of the Act."  Moses H.
Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983).

      The federal substantive law and the federal policy favoring
arbitration apply "[o]nce [an] agreement [to arbitrate] has been
proven and the protagonists identified."  McCarthy v. Azure, 22
F.3d 351, 355 (1st Cir. 1994).  In this case, however, there is
"a predecessor question of whether there was an agreement at all
to arbitrate."  Rosenberg v. Merrill Lynch, Pierce, Fenner &
Smith, Inc., 170 F.3d 1, 19 (1st Cir. 1999).  The court is not
"interpreting the breadth of the agreement," but rather
determining whether CHG and DHMC can be said to have agreed to
arbitrate at all.  McCarthy, 22 F.3d at 355.  In this instance,
"[r]eference should be made to standard principles of contract
law."  Rosenberg, 170 F.3d at 19; see also Donaldson Co. v.

7

Burroughs Diesel, Inc., 581 F.3d 726, 731 (8th Cir. 2009)
("[S]tate contract law governs the threshold question of whether
an enforceable arbitration agreement exists between litigants; if
[so], the federal substantive law of arbitrability governs
whether the litigants' dispute falls within the scope of the
arbitration agreement."); Fleetwood Enters. Inc. v. Gaskamp, 280
F.3d 1069, 1073 (5th Cir. 2002) (same); Bowlby v. Carter Mfg.
Co., 138 F. Supp. 2d 182, 187 (D. Mass. 2001) ("Whether an
agreement to arbitrate exists is a question of state contract
law.").

       To determine which state law is relevant, the court applies
the choice of law principles of New Hampshire.  See Klaxon Co. v.
Stentor Elec. Mfg. Co., 313 U.S. 487, 496-97 (1941); McCarthy, 22
F.3d at 356 n.5.  New Hampshire honors choice of law provisions
if "the contract bears any significant relationship to that
jurisdiction."  Hobin v. Coldwell Banker Residential Affiliates,
Inc., 144 N.H. 626, 628 (2000) (internal quotation marks and
citation omitted).  The Subcontract bears a significant
relationship to Florida because both CHG and Cross Country, the
signatories, have their principal places of business in that
state.  See Subcontract, at preamble.

       The choice-of-law provision alone would not necessarily
indicate that Florida law should be applied, because DHMC is not

a signatory to the Subcontract.  DHMC appears to concede,
however, that it is a third-party beneficiary of the Subcontract.
In any case, that fact is beyond dispute because "the contract
calls for a performance by the promisor which will satisfy some
obligation owed by the promisee to the third party."  Tamposi
Assocs., Inc. v. Star Mkt. Co., 119 N.H. 630, 633 (1979) (citing
4A Corbin, Contracts § 776 (1951)); see also Greenacre Props.,
Inc. v. Rao, 933 So. 2d 19, 23 (Fla. Dist. Ct. App. 2006) (A
third-party beneficiary relationship exists where "the contract
either expressly creates rights for . . . [the] third party or .
. . the provisions of the contract primarily and directly benefit
the third party or a class of persons of which the third party is
a member.").  Under the Subcontract, CHG was obligated to, inter
alia, indemnify and defend DHMC against certain liabilities.
This obligation, in effect, satisfied at least part of Cross
Country's obligation, under the Vendor Agreement, to indemnify
and defend DHMC.  Thus, DHMC is a third-party beneficiary of the
Subcontract.

New Hampshire has not decided whether a third-party
beneficiary is bound by a choice of law provision in the
contract.  The court must, therefore, attempt "to determine the
rule that the [New Hampshire] Supreme Court would probably
follow."  Invest Almaz v. Temple-Inland Forest Prods. Corp., 243

F.3d 57, 74 (1st Cir. 2001) (internal quotations marks and
citation omitted).  "In undertaking this forecast, the court must
look to relevant, i.e., analogous, state court decisions, and may
assay sister state adjudications of the issue."  Moores v.
Greenberg, 834 F.2d 1105, 1107 (1st Cir. 1987).  "[A]bsent a
definitive [New Hampshire Supreme Court] ruling, [the court] may
look to . . . considered dicta, scholarly works[] and any other
reliable data tending convincingly to show how the [New Hampshire
Supreme Court] would decide the issue at hand."  Clarke v. Ky.
Fried Chicken of Cal., Inc., 57 F.3d 21, 25 (1st Cir. 1995).  "In
conducting this tamisage, the federal court should pay particular
attention to those sources that the state's highest court has
endorsed in the past."  Andrew Robinson Int'l, Inc. v. Hartford
Fire Ins. Co., 547 F.3d 48, 52 (1st Cir. 2008); see also
McCarthy, 22 F.3d at 356 n.6 ("Where New Hampshire law is
recondite, we will turn to the types of materials that we believe
the New Hampshire Supreme Court would look to in formulating new
law.").

     The New Hampshire Supreme Court has honored a choice of law
provision in a similar situation.  In Roberts v. General Motors
Corp., 138 N.H. 532 (1994), the plaintiff brought a claim against
GMC for breach of a contract between GMC and one of its
franchisees.  The plaintiff argued that he should be considered a

third-party beneficiary of the contract, but the New Hampshire
Supreme Court disagreed.  The court observed that the contract
contained a choice of law provision providing that Michigan law
would govern any controversy arising under the contract.  Id. at
542.  Applying Michigan law, the court held that the plaintiff
was not an intended third-party beneficiary of the contract.  Id.
at 543.

      In addition, when deciding issues related to a third-party
beneficiary's rights under a contract, the New Hampshire Supreme
Court has relied on the Restatement (Second) of Contracts, as
well as the Williston treatise on contracts.  See Grossman v.
Murray, 144 N.H. 345, 348 (1999); Arlington Trust Co. v. Estate
of Wood, 123 N.H. 765, 767 (1983).  Section 309, comment b, of
the Restatement provides that, "[w]here there is a contract, the
right of a beneficiary is subject to any limitations imposed by
the terms of the contract."  Similarly, the Williston treatise
explains that "beneficiaries' rights have generally been held
subject to the conditions of the contract."  13 Samuel Williston
& Richard A. Lord, A Treatise on the Law of Contracts § 37:24
(4th ed. 2010).

      Based on Roberts, the Restatement, and the Williston
treatise, it appears that the New Hampshire Supreme Court would
hold that, where a party asserts rights as a third-party

                              11

beneficiary to a contract, the controversy will be governed by
the choice of law provision in that contract.  Accordingly, the
court will apply the choice of law provision in the Subcontract
and rely on Florida law to construe the Subcontract.


      B.   <u>Florida Law</u>

Florida law directs a court, when considering whether to
compel arbitration, to consider "(1) whether a valid written
agreement to arbitrate exists; (2) whether an arbitrable issue
exists; and (3) whether the right to arbitration was waived."
<u>Sitarik v. JFK Med. Ctr. Ltd.</u>, 7 So.3d 576, 578 (Fla. Dist. Ct.
App. 2009) (citing <u>Seifert v. U.S. Home Corp.</u>, 750 So.2d 633, 636
(Fla. 1999)).[2]  DHMC argues that none of these three elements is
met in this case.


      1. <u>Valid Agreement to Arbitrate</u>

There is no dispute that an agreement to arbitrate exists in
the Subcontract.  Rather, the parties disagree about whether that
agreement to arbitrate is binding on DHMC.[3]  The arbitration

---

    [2]Federal law adopts the same approach.  <u>See, e.g.</u>, <u>Bowlby</u>,
138 F. Supp. 2d at 187 (citing <u>Brennan v. King</u>, 139 F.3d 258,
263-67 (1st Cir. 1998)).

    [3]Florida courts consider the issue of whether the
arbitration agreement binds a nonsignatory as part of the issue

Case 1:09-cv-00160-JD  Document 55  Filed 06/10/10  Page 13 of 19

clause provides that "[a]ll disputes arising from or relating to this Agreement and not settled between the parties will be decided by binding arbitration." Subcontract, ¶ X.G. DHMC contends that the phrase "between the parties" means that the agreement to arbitrate was only between the parties who signed the Subcontract, Cross Country and CHG. DHMC points to several provisions in the Subcontract that suggest that Cross Country and CHG are the only "parties" to the Subcontract, and argues that CHG is attempting to force arbitration of a dispute between itself and a non-party, DHMC.

Although the arbitration clause refers explicitly to "parties," the Subcontract does not define that term. "Florida courts have generally held that arbitration clauses in contracts . . . are binding on third party beneficiaries." <u>Hirshenson v. Spaccio</u>, 800 So.2d 670, 673 (Fla. Dist. Ct. App. 2001). Third-party beneficiaries are bound even where the arbitration provision refers explicitly only to the signatories to the contract. <u>See</u> <u>Terminix Int'l Co. v. Ponzio</u>, 693 So.2d 104, 105 & 109 (Fla. Dist. Ct. App. 1997) (third-party beneficiaries were bound by contract provision requiring arbitration of any controversy or claim between "[t]he Purchaser and Terminix")).

---

of whether there was a valid agreement to arbitrate. <u>See</u> <u>Sitarik</u>, 7 So.3d at 578.

13

Therefore, under Florida law, the arbitration clause in the Subcontract is binding on DHMC.[4]

    2.   <u>Existence of an Arbitrable Issue</u>

DHMC argues that this case does not present an issue for which the Subcontract requires arbitration.  Pointing to the severability clause in Section X.L., DHMC contends that the Subcontract envisions that some claims may be resolved by the court, and that this either creates an ambiguity in the Subcontract or clarifies that only disputes between CHG and Cross Country must be arbitrated.[5]

---

[4]Federal law also "recognizes certain contract and agency principles under which nonsignatories sometimes can be obligated by" arbitration agreements in others' contracts.  <u>McCarthy</u>, 22 F.3d at 356 (citing <u>In re Oil Spill by Amoco Cadiz</u>, 659 F.2d 789 (7th Cir. 1981) and <u>Fisser v. Int'l Bank</u>, 282 F.2d 231 (2d Cir. 1960)).  One such principle, equitable estoppel, "precludes a party from enjoying rights and benefits under a contract while at the same time avoiding its burdens and obligations."  <u>InterGen N.V. v. Grina</u>, 344 F.3d 134, 145 (1st Cir. 2003).  DHMC claims that the provisions of the Subcontract related to indemnification, insurance, and defense should be enforced against CHG to benefit DHMC.  <u>See</u> Am. Compl. at ¶¶ 7, 10, 12, 20.  Furthermore, DHMC derived benefits from the Subcontract when CHG accepted the tender of the defense in <u>Aumand</u>, and when CHG paid a portion of the <u>Aumand</u> award.  Because DHMC has benefitted under the Subcontract, and continues to seek benefits under it, federal law dictates that DHMC cannot avoid the obligation to arbitrate its claims, which arise under and relate to the Subcontract.

[5]DHMC's argument requires interpretation of the arbitration provision which, as discussed above, is guided by federal law and

The severability clause states that the validity of "any
condition or covenant contained in this Agreement" may be decided
by "any court of competent jurisdiction."  Subcontract, at ¶ X.L.
It does not limit the scope of the arbitration clause, nor does
it render the arbitration clause ambiguous.  The severability
clause provides that <u>if</u> a court found that any provision of the
Subcontract were invalid, that decision would not affect other
parts of the Subcontract.  DHMC does not dispute the <u>validity</u> of
the arbitration clause, but rather only its <u>applicability</u>.
Therefore, the severability clause does not apply to DHMC's
claims, and DHMC's claims for indemnification and breach of
contract present arbitrable issues.

3.   <u>Waiver</u>

DHMC also argues that CHG waived its right to arbitrate
DHMC's claims when it agreed to defend and indemnify DHMC in the
<u>Aumand</u> litigation and neglected to reserve its right to
arbitrate.  DHMC maintains that CHG should not be allowed to
agree to defend and indemnify DHMC without demanding arbitration,
and then later force DHMC to arbitrate its claims regarding CHG's
duty to defend and indemnify.

_____

the federal policy favoring arbitration.

CHG did not, in fact, agree to indemnify DHMC, as DHMC states.  Rather, the Jensby letter states clearly that it was an "agreement to defend," and refers to CHG's "obligation to defend and, <u>potentially</u>, indemnify DHMC."  Jensby letter at 2 (emphasis added).  Furthermore, the Jensby letter states explicitly that CHG agreed to defend DHMC but reserved its rights with respect to the Subcontract.  Jensby wrote: "Nothing in this agreement to defend or the reservation of rights associated with this agreement either abrogates or supplements the duty to defend and indemnify DHMC as a third party beneficiary to the Staffing Subcontractors Agreement . . . entered into between Cross Country and CHG."  <u>Id.</u>  Contrary to DHMC's contention, CHG both reserved its rights under the Subcontract and stated explicitly that the agreement to defend did not otherwise alter the provisions of the Subcontract.

Moreover, when Jensby accepted the tender of defense, DHMC and CHG did not dispute that CHG was obligated to do so.  The arbitration clause, which applies to "<u>disputes</u> arising from or relating to [the Subcontract] and <u>not settled </u>between the parties," was not triggered at that time.  Subcontract, at ¶ X.G. (emphasis added).  Because the arbitration clause was not relevant then, CHG's acceptance of DHMC's tender did not operate as a waiver of the right to arbitrate.  Therefore, the

16

arbitration clause remained in effect, and the right to arbitrate was not waived.[6]

In sum, the Subcontract contains a valid, written arbitration agreement that is binding on DHMC.  DHMC's claims for indemnification and breach of contract are arbitrable issues, and CHG did not waive its right to arbitrate.  DHMC's claims against CHG for indemnification and breach of contract are subject to the arbitration clause.


II.   Contribution Claim

CHG argues that DHMC's claim for contribution from CHG should be submitted for arbitration along with its claims for indemnification and breach of contract, because it will save judicial resources.  "'[A] party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.'" McCarthy, 22 F.3d at 354 (citing AT&T Techs., Inc. v. Commc'ns Workers, 475 U.S. 643, 648 (1986)).  Unlike the indemnification and breach of contract claims, the contribution claim does not arise from the Subcontract and therefore there was no agreement by DHMC, imputed by law or otherwise, to arbitrate.  Therefore,

---

[6]To the extent DHMC is arguing that CHG waived its right to arbitrate simply by paying a portion of the Aumand damages, it has not provided any evidence that the payment was not made subject to the reservation of rights.

17

the contribution claim against CHG will not be submitted for
arbitration.  In addition, CHG has not shown that judicial
resources would be saved by submitting the contribution claim to
arbitration, particularly when the two claims against Cross
Country remain to be decided here.

III. <u>Request for Oral Argument</u>

Finally, CHG's request, pursuant to Local Rule 7.1(d), for
oral argument on its motion for summary judgment is denied.  Rule
7.1(d) requires "a written statement by a party outlining the
reasons why oral argument may provide assistance to the court."
CHG states only that it "believes that oral arguments may assist
the Court with its ruling on this motion."  This statement does
not comply with Rule 7.1(d), because CHG states only <u>that</u> oral
argument might be helpful, but does not explain <u>why</u> it might be
helpful.  Additionally, the parties' written filings are
sufficient, and oral argument would not assist the court in
ruling on this motion.

<u>Conclusion</u>

For the foregoing reasons, CHG's motion for summary judgment
(doc. no. 50) is granted with respect to DHMC's claims against
CHG for indemnification and breach of contract, but is denied

18

with respect to DHMC's claim against CHG for contribution.  The indemnification and breach of contract claims against CHG shall be submitted for binding arbitration in accordance with the terms of the Subcontract.

SO ORDERED.

_____
Joseph A. DiClerico, Jr.
United States District Judge

June 10, 2010

cc:  Andrew D. Dunn, Esquire
     Ronald J. Lajoie, Esquire
     Anil Madan, Esquire
     Joseph Gardner Mattson, Esquire
     Ralph Suozzo, Esquire

19