```
              UNITED STATES DISTRICT COURT FOR THE
                    DISTRICT OF NEW HAMPSHIRE
```

Dartmouth Hitchcock
Medical Center

   v.                                         Civil No. 09-cv-160-JD
                                                Opinion No. 2010 DNH 192

Cross Country Travcorps, Inc., et al.


### O R D E R

Dartmouth Hitchcock Medical Center ("DHMC") brought an action against Cross Country Travcorps, Inc., doing business as Cross Country Staffing, and their affiliates (referred to collectively as "Cross Country"), and CHG Medical Staffing, Inc., doing business as RN Network ("CHG"). DHMC's claims arise out of a medical negligence action, Aumand v. Dartmouth Hitchcock Medical Center, No. 06-cv-434-JL, brought by the daughter and husband of a patient, Katherine Coffey, who died following treatment at DHMC. In this case, DHMC seeks indemnification from Cross Country and contribution from Cross Country and CHG toward the damages paid in the Aumand case.

Cross Country and CHG move to exclude and to limit certain testimony by DHMC's expert witnesses. DHMC objects.

## Background

Deborah Aumand, as the executor of the estate of her mother, Katherine Coffey, and Francis Coffey, Deborah's father and Katherine's husband, brought a medical malpractice against DHMC, alleging that Katherine Coffey died as a result of treatment she received in 2005. A nurse involved in Mrs. Coffey's treatment was provided to DHMC through a vendor agreement with Cross Country, which then subcontracted with CHG to provide the nurse.

The Aumand plaintiffs added Cross Country and CHG as defendants in an amended complaint, alleging that the nurse they supplied to DHMC provided medical care below the applicable standard, which resulted in Mrs. Coffey's death. Later, the plaintiffs voluntarily dismissed their claims against Cross Country and CHG. Just before trial, DHMC attempted to bring Cross Country and CHG back into the case in order to address the issues necessary for deciding contribution and indemnification. The court denied DHMC's motion.

The case proceeded to trial with DHMC as the only defendant. The parties agreed, for purposes of their final pretrial statements, on the following statement of the case:

> In this case, the Plaintiffs allege that on September 1, 2005, following Katherine Coffey's admission to [DHMC] for treatment of a pleural effusion, that DHMC, through its employees, improperly treated Mrs. Coffey's repeated episodes of hypoglycemia by administering

>  four(4) separate doses of dextrose (D50) through and IV
>  in the dorsum of Mrs. Coffey's left hand, thereby
>  violating the standard of care.  In addition, the
>  Plaintiffs allege that the doses of D50 were
>  administered negligently and improperly and therefore
>  violated the standard of care.  The Plaintiffs further
>  allege that DHMC, through its employees, violated the
>  standard of care by failing to give Mrs. Coffey oral
>  nutrition to treat her repeated episodes of
>  hypoglycemia and/or by administering D5 and/or D10
>  through IV and by failing to identify what was causing
>  Mrs. Coffey's repeated episodes of hypoglycemia.
>  Finally, the Plaintiffs allege that DHMC's violations
>  of the standard of care caused injury to Mrs. Coffey,
>  specifically, that Mrs. Coffey suffered an infiltration
>  of D50, which resulted in the amputation of several of
>  her fingers, which resulted in her contracting an
>  infection called methicillin-resistant staphylococcus
>  aureus (MRSA), which caused Mrs. Coffey's death on
>  November 27, 2005.

The evidence at trial showed that Nurse Ruth Burdett administered the doses of D50 which the plaintiffs contended violated the standard of care.  An intern, Dr. Dawn Barclay, and Nurse Practitioner Jean Clark, a DHMC employee, also were involved in Mrs. Coffey's treatment.  The plaintiffs faulted DHMC for lacking a protocol to manage hypoglycemia, faulted the medical personnel for failing to properly manage Mrs. Coffey's hypoglycemia with feeding before using D50 and for the administration of D50, and faulted Nurse Burdett for improperly administering D50, among other things.

Although Nurse Burdett was provided to DHMC by Cross Country and CHG, for purposes of the Aumand case, Nurse Burdett was

treated as an employee of DHMC.  DHMC and the plaintiffs stipulated that DHMC was legally responsible for the conduct of all of the medical personnel who treated Mrs. Coffey at DHMC. The issue of the individual negligence of DHMC and the medical providers was not addressed, and the jury was instructed that if they found "Mrs. Coffey's injuries were caused by negligence of any of the Dartmouth Hitchcock staff who participated in her care, . . . then [they] should find the hospital liable for those injuries."  Aumand, dkt. no. 131, p.93.

Because DHMC was the only defendant, for purposes of determining liability, the verdict form asked only:  "Do you find in favor of the plaintiffs on their claim of medical negligence?" and provided a line for a "yes" or "no" answer.  The jury found in favor of the plaintiffs and awarded a total of $983,000 in damages.  Judgment was entered accordingly.  DHMC and CHG each paid part of the damages owed to the plaintiffs in the Aumand case.  Cross Country has not provided indemnification or contribution toward the damages paid.

DHMC then brought suit against Cross Country and CHG, alleging a right to indemnification and contribution from both Cross Country and CHG toward the damages paid in the Aumand case and a claim for breach of contract against CHG.  The breach of contract and indemnification claims against CHG are subject to

arbitration.  The court previously interpreted the vendor agreement between Cross Country and DHMC to obligate Cross Country to indemnify DHMC for that part of the damages awarded in the <u>Aumand</u> case which is attributable to Nurse Burdett's negligence.  Order on Summary Judgment, dkt. no. 49, at 14.

## Discussion

Cross Country and CHG challenge the expected testimony of four expert witnesses that DHMC has disclosed for purposes of proving its indemnity claim against Cross Country and its contribution claims against both Cross Country and CHG.  The challenged witnesses are two attorneys, Alan B. Rindler and Eric J. Stockman; a nurse, Barbara J. Levin; and a physician, Dr. John H. Sanders, Jr.  Cross Country and CHG contend that the attorneys cannot testify as experts about their interpretation of the jury's verdict in the <u>Aumand</u> case with respect to allocating negligence and that the nurse and physician can testify only about the applicable standard of care, not an allocation of negligence underlying the jury's verdict.

DHMC contends that the court can decide the allocation issue for purposes of indemnification and contribution as a matter of law, as a court would decide a motion for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50.  In support

of that theory, DHMC asserts that the testimony of its experts, interpreting the evidence and the verdict in the Aumand case, would assist the court by providing evidence of allocation of negligence. Specifically, DHMC contends, based on its experts' opinion, "that the jury necessarily found no Clark liability and no independent DHMC liability." In addition, DHMC argues that principles of equitable estoppel and issue preclusion bar Cross Country and CHG from litigating the allocation of negligence issue here.

A.  Expert Witness Opinions

Witnesses called to testify as experts must satisfy certain evidentiary requirements:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702. Expert testimony must be relevant to an issue in the case and must help resolve that issue. See United States v. Rosa-Carino, 615 F.3d 75, 81 (1st Cir. 2010). The court acts as a gatekeeper to determine whether the opinion an expert offers

is based on a reliable foundation, is relevant to an issue in the case, and will assist the trier of fact.  Pages-Ramirez v. Ramirez-Gonzalez, 605 F.3d 109, 113 (1st Cir. 2010)

In the Aumand case, DHMC was the only defendant.  The plaintiffs charged DHMC with liability for its own negligence along with the negligence of the medical personnel who treated Mrs. Coffey under several negligence theories, and not all of the theories implicated Nurse Burdett.  Because Cross Country and CHG are liable in indemnity and contribution only for Nurse Burdett's negligence, the question here is what part of the negligence that resulted in the jury's verdict in Aumand is attributable to Nurse Burdett.  That issue was not presented, considered, or resolved in the Aumand case.

The evidence and the verdict in the Aumand case did not address the allocation of negligence.  Instead, the Aumand jury only determined that DHMC was liable to the plaintiffs for medical negligence.  Therefore, the Aumand case does not provide a basis for resolving DHMC's indemnification and contribution claims here.

The opinions of DHMC's witnesses that the jury's verdict "necessarily" found certain negligence but not other negligence would be based on conjecture and speculation.  See Johnson v. Gordon, 409 F.3d 12, 25 (1st Cir. 2005).  As such, expert

7

opinions that would be offered to interpret the Aumand verdict for purposes of showing an allocation of negligence lack an adequate foundation and are inadmissible for motion practice and at trial.  See Schubert v. Nissan Motor Corp., 148 F.3d 25, 29 (1st Cir. 1998).  In addition, it is far from clear that DHMC's witnesses are qualified to give opinions about whether the evidence in the Aumand case was sufficient to prove the individual negligence of the individuals who provided treatment to Mrs. Coffey.

B.  Equitable Estoppel and Issue Preclusion

DHMC also contends that Cross Country and CHG are barred from litigating the issue of allocation of negligence because they did not litigate that issue as part of the Aumand case. Cross Country and CHG respond to DHMC's argument in a reply, arguing that it lacks merit.  Because equitable estoppel and issue preclusion are not material to the motion to exclude expert opinions, the court will not address those arguments in the context of the present motion.

Conclusion

For the foregoing reasons, the defendants' motion to exclude certain expert testimony (document no. 60) is granted.

It is very unfortunate that, for whatever the reasons may be, allocation was not resolved in the context of the Aumand case.

Again, the court urges the parties to resolve this case by agreement.  Otherwise, it would appear that resolution by jury trial, will, to a great extent, involve retrying the Aumand case and the further expenditure of significant resources by the parties and the court.

SO ORDERED.

_____
Joseph A. DiClerico, Jr.
United States District Judge

November 10, 2010

cc:  Andrew D. Dunn, Esquire
     Ronald J. Lajoie, Esquire
     Anil Madan, Esquire
     Joseph Gardner Mattson, Esquire
     Ralph Suozzo, Esquire